Jesse C. Rose, Esq. (NY # 4645685)
*Pro Hac Vice to be filed*
Bianca Acquaviva, Esq. (NY 5600473)
*Pro Hac Vice to be filed*
**WHITE, ROSE, & HILFERTY, P.C.**
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (646) 698-8990
Email: Rose@nycjobattorney.com
acquaviva@nycjobattorney.com

Jordon R. Harlan, Esq. (CA #273978)
**HARLAN HILLIER DIGIACCO LLP**
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Fax: (619) 839-3895
Email: jordon@hhdlaw.com

***Attorneys for Plaintiff***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO.<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**<br>1. **DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**<br>2. **DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.**<br>3. **DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND** |

HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.

4. **HOSTILE WORK ENVIRONMENT IN VIOLATION 42 U.S.C. § 2000e**

5. **INTERFERENCE AND RETALIATION IN VIOLATION OF 29 U.S.C. § 2601 et seq.**

6. **RETALIATION IN VIOLATION OF  42 U.S.C. § 2000e**

7. **RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.**

Plaintiff Emily Gal ("Plaintiff") by her attorneys White, Rose & Hilferty, PC and Harlan Hillier DiGiacco LLP as and for her Verified Complaint, hereby alleges the following:

## NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendant sexually harassed her, discriminated against her based upon her sex and age, interfered with her protected leave of absence, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (42 USC § 2000-e), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*), the Family and Medical Leave Act (29 U.S.C. § 2601, *et seq.*), and the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12940). Plaintiff seeks damages to redress her financial and emotional damages that Defendant's unlawful discriminatory and retaliatory practices in violation of federal and state statutes inflicted upon her.

## JURISDICTION

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and

- 1 -

28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which the Defendant resides.

## PROCEDURAL REQUIREMENTS

5.     On April 24, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

6.     Plaintiff's formal Charge of Discrimination filed with the EEOC asserted the same factual allegations that are asserted in this Verified Complaint.

7.     On May 8, 2025, Plaintiff received a Notice of Suit Rights dated May 8, 2025 from the EEOC.

8.     Plaintiff timely and properly commenced this action within 90 days of receipt of the Notice of Suit Rights after exhausting all administrative remedies with the EEOC.

## PARTIES

9.     At all relevant times, Plaintiff was an individual residing in the State of Arizona, County of Maricopa. Plaintiff was employed by Defendant.

10.     Defendant is an American technology company with a corporate address located in the State of California, County of San Mateo.

## RELEVANT FACTS

11.     Plaintiff is a 42-year-old female.

12.     On October 18, 2021, Defendant hired Plaintiff as a Product Marketing Lead.

13.     Throughout her employment, Plaintiff performed her job duties in an exemplary manner.

14.     Beginning in 2022, Plaintiff's colleague, Prashanth Kamath, subjected Plaintiff to repeated sex-based diminishment and disrespect. Mr. Kamath was

- 2 -

consistently disrespectful to Plaintiff and other female colleagues. For example, Mr. Kamath repeatedly canceled one-on-one meetings with Plaintiff and refused to meet with her. When Plaintiff followed up, Mr. Kamath directed her to work with his subordinate instead.

15.    Mr. Kamath's discriminatory behavior reached such a point that Plaintiff's manager felt the need to step in and remind Mr. Kamath that Plaintiff was a peer, and he must treat her as such.

16.    Mr. Kamath routinely dismissed input from women on their team. Plaintiff and other women were regularly excluded from reviews and executive meetings. They had to fight to be included. Mr. Kamath often dismissed findings and data-driven work by his female colleagues, demanding additional analysis without substantive justification.

17.    As a result of the discriminatory environment created and fostered by Mr. Kamath, numerous product and strategy missteps occurred. In nearly every case, blame for these missteps was deflected onto female colleagues, despite being the result of decisions made by male colleagues. This pattern continued throughout Plaintiff's tenure with Defendant.

18.    Women on the team were frequently labeled "difficult" or "not collaborative," even when presenting accurate information. Contrarily, male peers rarely faced similar scrutiny or consequences for mistakes of comparable or greater gravity. Further, administrative tasks like note taking and scheduling were assigned by men, including Mr. Kamath, to the women on the team. Men only performed such tasks when they volunteered.

19.    Despite the numerous roadblocks Plaintiff faced and the discriminatory and hostile work environment to which she was subjected, Plaintiff received a performance rating of "Exceeds Expectations" in 2022.

20.    On January 1, 2023, Plaintiff began a maternity leave.

21.    During Plaintiff's maternity leave, her team and project were moved as

- 3 -

part of a reorganization. As part of this transition, Defendant demoted Plaintiff from an M2 (manager) to an IC 7 (independent contributor) and created a new managerial role on the team to which Plaintiff was moved.

22. Upon information and belief, the fact that Plaintiff was on or about to go on a maternity leave was a factor in the decision to include her in the reorganization.

23. Despite the fact that Plaintiff was on a protected leave of absence, Defendant contacted Plaintiff and asked her to interview for this new managerial role. Irene Conlon-Jones, also a mother out on leave, was similarly asked to interview for this role. The only other candidate was Alex Davenport, a male not on leave.

24. Notably, Plaintiff was aware that layoffs had just occurred and multiple women on maternity leave, including her direct report and another team member, had been laid off. With this context, and the fact that Plaintiff had just been moved to another team and was reporting to a new manager with whom she had no history, Plaintiff felt pressured by Defendant to participate in the interview process and did not feel that she could decline the interview and retain her job.

25. Upon information and belief, the interviews were initially scheduled during a time when Mr. Davenport on a six-week "recharge" leave of absence. Mr. Davenport's "recharge" leave was accommodated for purposes of the interviews in that he was not forced to return from that leave and was permitted to interview after he had returned from his leave of absence. Meanwhile, Defendant contacted the two female candidates while they were on protected leaves of absence and interviewed them after subjecting them to significant pressure and implicit coercion to participate without affording them any time to prepare for said interviews.

26. Defendant placed both female candidates at a significant disadvantage compared to the male candidate, who Defendant ultimately chose for the role. While technically included in the interview process, the timing and format of the

- 4 -

process were inherently discriminatory against the women on leaves. Plaintiff was not given the opportunity to meaningfully prepare for the interviews and was physically and emotionally recovering postpartum.

27. Defendant selected Mr. Davenport for the role and he became Plaintiff's manager. When Plaintiff reached out for feedback about the interviews, she was told that she had done well, but was likely "not at [her] best having just had a baby."

28. On May 24, 2023, while Plaintiff was still on protected leave, Mr. Davenport contacted Plaintiff and expressed how much the team would benefit from Plaintiff's contributions once she returned from leave, reinforcing an expectation that even while on leave (and with months of her leave remaining), Plaintiff was to be thinking about work.

29. On August 2, 2023, even though she was still on protected leave, Plaintiff had her first one-on-one meeting with Mr. Davenport. During this meeting, Mr. Davenport stated that he "really needed to know exactly when [Plaintiff] would be returning" from protected leave as the team needed Plaintiff's expertise.

30. Even though Plaintiff was still on protected leave, Mr. Davenport was solely focused on work matters and made it clear that Plaintiff's protected leave was a burden. Mr. Davenport also inappropriately requested that Plaintiff participate in an upcoming team offsite event, even though she would still be on protected leave.

31. From September 18 to 20, 2023, while still on protected leave, Plaintiff virtually attended the team offsite, per Mr. Davenport's request.

32. On September 25, 2023, Plaintiff returned from protected leave.

33. Upon her return from protected leave, Plaintiff quickly noticed recurring patterns in Mr. Davenport's behavior. At times, Mr. Davenport would assign her high-stake tasks with minimal context and an implied sense of urgency based on incomplete or misleading information, then project blame Plaintiff when

- 5 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

things did not go according to plan due to his failure to provide clarity. At other times, he would alter the requirements of an assignment then blame Plaintiff. This behavior reflects a pattern of performance narrative manipulation and gendered scapegoating.

34. On November 14, 2023, Plaintiff's son experienced a sudden and severe anaphylactic reaction, requiring the use of an EpiPen and an urgent trip to the hospital. Plaintiff was understandably shaken upon returning to work following this event. Despite knowing about Plaintiff's caregiving obligations and her son's disability, Mr. Davenport continued to put undue pressure on Plaintiff.

35. Mr. Davenport's unpredictability and lack of support were setting Plaintiff up to fail.

36. Plaintiff frequently raised concerns about being overwhelmed with assignments while Mr. Davenport failed to provide support to Plaintiff or other female colleagues struggling with the same issues. In fact, he actively made them worse. Plaintiff's colleagues echoed her experience and frustration with Mr. Davenport's behavior. Notably, Plaintiff's workload greatly exceeded that of her male coworkers. Multiple women who reported to Mr. Davenport left their positions with Defendant because of the immense pressure Mr. Davenport specifically put on mothers.

37. Throughout November and December of 2023, Plaintiff continued to receive gendered feedback based not on her job performance. She was falsely labeled "stubborn" and "difficult" by male colleagues Lovlesh Chhabra and Sumeet Shrivastava for refusing to go along with their ill-advised plans, which were later rejected by leadership in favor of the proposal Plaintiff led. Plaintiff also learned that upon her initial pushback to Mr. Chhabra and Mr. Shrivastava's plans, they attempted to go over Plaintiff's head to her male manager with the intention of having her male manager overrule her.

38. Ultimately, as Plaintiff was on protected leave from January 1, 2023 to

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

September 25, 2023, she received a performance rating of "On Leave" for 2023.

39. Though Plaintiff was not subject to a formal performance review in 2023 due to her On Leave status, Mr. Davenport chose to write an informal review anyway. In this informal review, Mr. Davenport highlighted and perpetuated the gendered feedback noted above. In particular, Mr. Davenport falsely claimed that Plaintiff approached decisions in a binary manner without offering compromise or alternatives. This narrative was demonstrably false, as Plaintiff had exhibited significant flexibility by proposing a compromise plan that leadership ultimately adopted, even taking extra steps to draft a detailed execution framework for that plan. Mr. Davenport's decision to elevate this particular piece of gendered criticism, despite knowing the full context and immediately following her return from maternity leave, demonstrates a clear discriminatory motivation due to her gender and pregnancy and retaliatory motive due to her taking protected leave.

40. In early 2024, Mr. Davenport selectively stripped Plaintiff of resources with no plan to backfill, leaving Plaintiff critically under-resourced despite her repeated warnings of same. He then forced her to justify the need for the resources he had removed. This resulted in a need for Plaintiff to cover multiple roles which Mr. Davenport removed, unnecessarily and deliberately compounding her already unsustainable workload. When a new employee was finally hired in October of 2024, Mr. Davenport indicated that the new employee was only to spend fifty percent of their time on Plaintiff's project. Further, Plaintiff had to train the new employee while continuing to do the work of multiple roles. When discussing resourcing for Plaintiff's project, Mr. Davenport indicated that leadership didn't want to hire "higher-level people" – a clear indicator of age-based animus.

41. Although Plaintiff was essentially performing miracles under impossible conditions, Mr. Davenport continued to treat Plaintiff as if she were failing. Plaintiff's female colleagues echoed her feelings on Mr. Davenport's behavior.

- 7 -

42. In February 2024, following a series of outages, product instability issues, and major feature gaps negatively impacting customer experience, Defendant held a cross-functional meeting. Both Plaintiff and Mr. Kamath were present. During the meeting, Plaintiff and another female team member delivered firsthand evidence of the problem and clearly and consistently recounted the issues. Immediately following the meeting, Mr. Kamath reached out to Anish Savani, a male, and asked for "the real story." Clearly, Mr. Kamath only trusted the opinion of the male in the room, although Mr. Savani had ceased supporting the product line and was only included because Mr. Kamath added him. Mr. Savani alerted Plaintiff to Mr. Kamath's message and acknowledged the gendered nature of the request.

43. On April 27, 2024, Plaintiff reached out to Mr. Davenport via email to express concerns with Mr. Kamath's behavior and another male colleague, Frank Petterson. In her email, Plaintiff highlighted how Mr. Kamath and Mr. Petterson's lack of hands-on involvement, constant goalpost shifting, and condescending tone were actively impeding progress and undermining morale. The team subjected to this behavior was composed entirely of women. Despite their collective expertise and leadership on the project, Mr. Kamath and Mr. Petterson routinely dismissed the input of the all-female team, demanded redundant rework, and questioned their insights with a tone that was consistently distrustful and demeaning. This behavior created a gendered dynamic in which the only female leaders on the project were repeatedly second-guessed and sidelined by the men who had significantly less experience and knowledge about the project.

44. From August 5 to 8, 2024, Plaintiff attended an offsite meeting in Chicago along with Mr. Davenport and other team members. Following an emotional conversation about the toll of balancing caregiving obligations with the mounting stress and pressure of work, Mr. Davenport reached out to check in on Plaintiff.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

45. The following morning, Mr. Davenport reassured Plaintiff in person with positive performance feedback, telling her that she was doing a great job. He admitted that he needed her and that she would need to fall on her face "multiple times for that to even be a question."

46. Plaintiff was given a mid-year 2024 rating of "Meets and/or Exceeds" expectations. This review included specific praise for key accomplishments, including fundamentally shifting product direction to include quality hurdles, securing $2.6M in funding, driving cross-functional alignment through a framework adopted in executive forums, and strong collaboration with complex stakeholders.

47. In August and September of 2024, Plaintiff was named as a primary witness in two formal complaints submitted by female team members related to gender discrimination, harassment, bullying, and retaliation against several senior male members of the cross-functional team. Over three sessions with Defendant's investigator, Plaintiff engaged in protected activity when she provided testimony of her experiences and observations of a hostile work environment, including a pattern of exclusion, dismissal, gender-based power dynamics employed by senior male colleagues against the women on the team, and systemic gender bias. Plaintiff detailed how decisions were often made without input from women, how female team members were expected to take notes or handle logistical follow-ups, and how Plaintiff personally felt excluded, minimized, and at times bullied all due to her gender.

48. Following engaging in this protected activity, Plaintiff experienced retaliation by the male colleagues about whom she had testified. Specifically, Mr. Chhabra and Mr. Shrivastava failed to respond or acknowledge multiple messages in which Plaintiff shared work product and explicitly asked for feedback. While Plaintiff and Mr. Shrivastava had primarily collaborated asynchronously prior to the complaints, there was an observable drop in direct engagement and

- 9 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

responsiveness from him after Plaintiff engaged in protected activity. Mr. Chhabra, despite needing Plaintiff's assistance on a project at the request of his Vice President, frequently failed to acknowledge updates from Plaintiff or respond to next-step requests, often requiring multiple follow-ups over several weeks. Plaintiff later learned she had been excluded from at least three to four meetings or reviews relevant to her responsibilities, all of which were attended by Mr. Chhabra and Mr. Shrivastava. Neither notified Plaintiff or took any step to ensure her participation.

49. On February 10, 2025, despite receiving a "Meets and/or Exceeds" mid-year rating in 2024 and repeatedly being told she was doing a great job, Defendant abruptly terminated Plaintiff's employment on the pretextual basis of her performance.

50. Upon information and belief, Defendant conducted layoffs in a discriminatory manner based on age. Layoff data from Plaintiff's organization and role supports this conclusion. Employees in Plaintiff's role aged forty and older were terminated at five times the rate of those under forty. Notably, the statistical likelihood of this occurring by chance is only approximately 1 in 1,408. On Plaintiff's immediate team of fifteen Product Marketing Specialists, four individuals were terminated, yet two of them (including Plaintiff) were over forty, meaning that those over forty had ten times greater odds of being terminated compared to those under forty.

51. Plaintiff's team member, who is under forty with no history of parental or medical leave, was promoted while Plaintiff, at the time a forty-one-year-old woman who recently returned from maternity leave and engaged in protected activity, was included in the layoff. This was despite her having broader responsibilities, greater accountability, and a strong performance record. Further, upon information and belief, multiple employees in Plaintiff's role with inferior performance records and fewer responsibilities than Plaintiff, but who were under forty, were retained by Respondent while Plaintiff was terminated.

- 10 -

52. Additionally, throughout her time employed by Defendant, Plaintiff observed that younger team members were promoted to her level with less responsibility.

53. Further, multiple women filed internal complaints detailing gender discrimination, harassment, and hostile work environment claims. As a result of the gendered hostile work environment created and fostered by Defendant, multiple women went on protected medical leaves due to symptoms of stress and burnout.

## AS AND FOR A FIRST CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

## (Title VII Sex Discrimination)

54. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

55. Defendant's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

56. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

57. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2—namely, Plaintiff is female.

58. Plaintiff possessed proper qualifications for Defendant to continue her employment. Specifically, Defendant routinely issued Plaintiff exemplary performance reviews, granted Plaintiff additional restricted stock units in recognition of such positive performance, and selected Plaintiff for consideration for a promotional role.

59. Defendant engaged in unlawful practices by discriminating against

- 11 -

Plaintiff on the basis of her sex by subjecting her to disparate treatment in the terms and conditions of her employment. Specifically, Defendant subjected Plaintiff to disparate treatment by, among other things: directing her to work with subordinates instead of engaging with her; excluding her and her female colleagues from reviews and meetings; dismissing her opinions and work done by her and other female colleagues; demanding additional work without justification; blaming her and other female colleagues for the poor results of male colleagues; labeling her "difficult," "not collaborative," and "stubborn;" providing preferential treatment to a male interviewee; and placing disparate and undue pressure and workload on her.

60.    Defendant subjected Plaintiff to adverse employment action by, among other things: excluding her from relevant team meetings, denying her a promotion in favor of a male colleague, and ultimately terminating her employment based on pretextual performance accusations, causing Plaintiff significant mental anguish and emotional distress.

61.    As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

62.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

///

///

///

- 12 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

## AS AND FOR A SECOND CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF 29 U.S.C § 623

## (ADEA Age Discrimination)

63. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

64. The Age Discrimination in Employment Act of 1967, 29 U.S.C. §623 states, in relevant part: "It shall be unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age; 2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's age; or to reduce the wage rate of any employee in order to comply with this chapter."

65. Plaintiff is a member of a protected class pursuant to 29 U.S.C § 623, namely Plaintiff is 42 years of age. During her employment with Defendant, Plaintiff was over the age of 40.

66. As outlined herein, Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her age by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated younger employees. Specifically, Defendant subjected Plaintiff to disparate treatment by, among other things: selectively terminating her and other individuals over forty (40) years of age and terminating her employment while retaining an individual under forty (40) years of age despite the fact that Plaintiff had broader responsibilities and greater accountability than the retained, younger individual and a strong performance record.

67. As a direct and proximate result of Defendant's unlawful conduct in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C § 623,

- 13 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

Plaintiff has suffered and continues to suffer monetary and/ or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

68.  As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C § 623. Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

### AS AND FOR A THIRD CAUSE OF ACTION

### DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.

### (CA State Sex and Age Discrimination)

69.  Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

70.  The California Fair Employment and Housing Act, FEHA; Gov. Code, § 12940(a) provides, in pertinent part: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decision making, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

- 14 -

71. Plaintiff is a member of a protected class pursuant to FEHA; Gov. Code, § 12940(a) —namely, Plaintiff is a female over forty (40) years of age.

72. Plaintiff possessed proper qualifications for Defendant to continue her employment. Specifically, Defendant routinely issued Plaintiff exemplary performance reviews, granted Plaintiff additional restricted stock units in recognition of such positive performance, and selected Plaintiff for consideration for a promotional role.

73. Defendant engaged in unlawful practices by discriminating against Plaintiff on the basis of her sex and age by subjecting her to disparate treatment in the terms and conditions of her employment. Specifically, Defendant subjected Plaintiff to disparate treatment by, among other things: directing her to work with subordinates instead of engaging with her; excluding her and her female colleagues from reviews and meetings; dismissing her opinions and work done by her and other female colleagues; demanding additional work without justification; blaming her and other female colleagues for the poor results of male colleagues; labeling her "difficult," "not collaborative," and "stubborn;" providing preferential treatment to a male interviewee; placing disparate and undue pressure and workload on her; selectively terminating her and other individuals over forty (40) years of age; and terminating her employment while retaining an individual under forty (40) years of age despite the fact that Plaintiff had broader responsibilities and greater accountability than the retained, younger individual and a strong performance record.

74. Defendant subjected Plaintiff to adverse employment action by, among other things: excluding her from relevant team meetings, denying her a promotion in favor of a male colleague, and ultimately terminating her employment based on pretextual performance accusations, causing Plaintiff significant mental anguish and emotional distress.

75. As a direct and proximate result of Defendant's unlawful conduct in

- 15 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

violation of the California Fair Employment and Housing Act, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

76. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the California Fair Employment and Housing Act, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT IN VIOLATION 42 U.S.C. § 2000e

## (Title VII Sexual Harassment)

77. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

78. During Plaintiff's employment, Defendant subjected her to sex-based discrimination that was so pervasive, it created a hostile work environment and arose to the level of gender-based sexual harassment.

79. Specifically, Defendant subjected Plaintiff to sex-based sexual harassment by, among other things: excluding her and her female colleagues from reviews and meetings; dismissing her opinions and work done by her and other female colleagues; demanding additional work without justification; requiring females to perform secretarial tasks; blaming Plaintiff and her female colleagues for the poor results of male colleagues; labeling her "difficult," "not collaborative," and "stubborn;" and providing preferential treatment to a male interviewee over female interviewees.

80. Defendant subjected Plaintiff to a work environment that was permeated with discriminatory behavior, double standards, and gendered

- 16 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

stereotyping, which altered the terms and conditions of Plaintiff's employment and created an abusive work environment. Notably, Plaintiff's colleagues filed complaints with Defendant regarding this behavior and work environment. Therefore, Defendant subjected Plaintiff to a hostile work environment on the basis of her sex in violation of Title VII.

81.   As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

82.   As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION

## INTERFERENCE AND RETALIATION IN VIOLATION OF 29 U.S.C. § 2601 et seq.

## (FMLA Interference and Retaliation)

83.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84.   Defendant's actions against Plaintiff concerned one of the activities protected by the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

85.   The Family and Medical Leave Act ("FMLA") states, in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29

- 17 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

U.S.C. § 2615(a)(1).

86.   Plaintiff exercised her rights pursuant to the FMLA by taking a maternity leave of absence under Defendant's short term disability policy and the FMLA.

87.   Plaintiff possessed proper qualifications for Defendant to continue her employment. Specifically, Defendant routinely issued Plaintiff exemplary performance reviews, granted Plaintiff additional restricted stock units in recognition of such positive performance, and selected Plaintiff for consideration for a promotional role.

88.   Defendant unlawfully "interfered with" and "restrained" Plaintiff's FMLA rights by, among other things: repeatedly contacting Plaintiff during her protected leave; subjecting Plaintiff to interviews while she was on protected leave; pressuring Plaintiff to return from protected leave; and requesting that Plaintiff attend work events while on protected leave. Defendant ultimately retaliated against Plaintiff for exercising her FMLA rights by terminating her employment.

89.   As a direct and proximate result of Defendant's unlawful conduct in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

90.   As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

///

///

- 18 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

## AS AND FOR A SIXTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF  42 U.S.C. § 2000e

## (Title VII Retaliation)

91.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92.   Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

93.   Title VII of the Civil Rights Act of 1964, Section 2000e-3(a) states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

94.   Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

95.   The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

96.   Plaintiff engaged in protected activity by complaining about discrimination and retaliation, opposing Defendant's unlawful employment practices, and participating in discrimination investigations on numerous occasions between 2022 and February 2025.

97.   Defendant was aware of Plaintiff's engagements in protected activity

- 19 -

as Plaintiff complained directly to her supervisors and participated in an investigation conducted by Defendant.

98.   As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: excluding Plaintiff from relevant meetings, refusing to engage with Plaintiff on work-related matters, and ultimately terminating Plaintiff's employment on the pretextual basis of poor performance.

99.   Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

100.   As a direct and proximate result of Defendant's unlawful conduct in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

101.   As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.

## (FEHA Retaliation)

102.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

- 20 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

103. Under the California Fair Employment and Housing Act, FEHA; Gov. Code, § 12940(h) makes it an unlawful "[F]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

104. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

105. Plaintiff engaged in protected activity by complaining about discrimination and retaliation, opposing Defendant's unlawful employment practices, and participating in discrimination investigations on numerous occasions between 2022 and February 2025.

106. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to her supervisors and participated in an investigation conducted by Defendant.

107. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: excluding Plaintiff from relevant meetings, refusing to engage with Plaintiff on work-related matters, and ultimately terminating Plaintiff's employment on the pretextual basis of poor performance.

108. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

109. As a direct and proximate result of Defendant's unlawful conduct in violation of the California Fair Employment and Housing Act, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

110. As a direct and proximate result of Defendant's unlawful and

- 21 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

retaliatory conduct in violation of the California Fair Employment and Housing Act, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE** Plaintiff EMILY GAL demands judgment as follows:

a) A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State of California:

b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

c) An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

e) An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f) An award of punitive damages in an amount to be determined at trial;

g) An award for Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

///

///

///

- 22 -

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

h) Such other and further relief as this Court may deem just, proper, and equitable.

Date: July 21, 2025                    **HARLAN HILLIER DIGIACCO LLP**

                                       By: /s/ Jordon R. Harlan
                                       Jordon R. Harlan, Esq. (CA #273978)
                                       701 Island Avenue, Second Floor
                                       San Diego, CA 92101
                                       Telephone: (619) 330-5120
                                       Fax: (619) 839-3895
                                       Email: jordon@hhdlaw.com

                                       *In association with*:

                                       **WHITE, ROSE, & HILFERTY, P.C.**

                                       Jesse C. Rose, Esq. (NY # 4645685)
                                       *Pro Hac Vice to be filed*
                                       Bianca Acquaviva, Esq. (NY 5600473)
                                       *Pro Hac Vice to be filed*
                                       757 Third Avenue, 20th Floor
                                       New York, New York 10017
                                       Telephone: (646) 698-8990
                                       Email: Rose@nycjobattorney.com
                                       acquaviva@nycjobattorney.com

- 23 -

## **DEMAND FOR JURY TRIAL**

Plaintiff Emily Gal hereby demands a trial by jury on every issue on which she is so entitled.

**Date: July 21, 2025**

**HARLAN HILLIER DIGIACCO LLP**

By: */s/ Jordon R. Harlan*
Jordon R. Harlan, Esq. (CA #273978)
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Fax: (619) 839-3895
Email: jordon@hhdlaw.com

*In association with*:

**WHITE, ROSE, & HILFERTY, P.C.**

Jesse C. Rose, Esq. (NY # 4645685)
*Pro Hac Vice to be filed*
Bianca Acquaviva, Esq. (NY 5600473)
*Pro Hac Vice to be filed*
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (646) 698-8990
Email: Rose@nycjobattorney.com
acquaviva@nycjobattorney.com

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMILY GAL, an individual,

Plaintiff,

vs.

META PLATFORMS, INC.,

Defendant.

**VERIFICATION**

**PLAINTIFF EMILY GAL**, pursuant to the provisions of 28 U.S.C. § 1746, declares the following under penalty of perjury:

1.  I am the Plaintiff in the above-captioned matter.

2.  I have read the foregoing Verified Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed: Virginia Beach____, ~~Arizona~~ Virginia

July 17__, 2025

Sonya Mack

_____
REGISTRATION NUMBER
7543946
COMMISSION EXPIRES
September 30, 2029

*Emily Marissa Gal*

EMILY GAL

Commonwealth of Virginia
County of Virginia Beach

The foregoing instrument was subscribed and sworn before me on 07/17/2025 by Emily Marissa Gal.

7543946

My commission expires: 09/30/2029

Notarized remotely online using communication technology via Proof.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL