SEYFARTH SHAW LLP
Ari Hersher (SBN 260321)
ahersher@seyfarth.com
Ryan McCoy (SBN 276026)
rmccoy@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

Attorneys for Defendant
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GAL, an individual,,<br><br>            Plaintiff,<br><br>      v.<br><br>META PLATFORMS, INC.,<br><br>            Defendant. | Case No. 4:25-CV-06110-JST<br><br>**STATEMENT OF RECENT DECISION REGARDING DEFENDANT META PLATFORMS, INC.'S MOTION TO TRANSFER VENUE AND PETITION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**<br><br>Complaint Filed:   July 21, 2025 |

## STATEMENT OF RECENT DECISION

Pursuant to Civil Local Rule 7-3(d)(2), Defendant Meta Platforms, Inc. submits this Statement of Recent Decision regarding its Motion to Transfer Venue to the District of Arizona and Stay Case Deadlines Pending Ruling on Motion to Transfer Venue (Dkt. 19), and Petition to Compel Arbitration and Stay All Proceedings (Dkt. 20). On May 26, 2026, after Defendant filed its reply in this action, the Honorable Joseph C. Spero, Magistrate Judge of the Northern District of California, issued an order in *Eunbit Cho v. Meta Platforms, Inc.* (Case No. 25-cv-08467-JCS) transferring the action to the District of Arizona. Attached as **Exhibit A** is a true and correct copy of Judge Spero's written decision.

DATED: May 27, 2026                          Respectfully submitted,

                                             SEYFARTH SHAW LLP


                                             By: */s/ Ryan McCoy*
                                                 Ari Hersher
                                                 Ryan McCoy

                                                 Attorneys for Defendant
                                                 META PLATFORMS, INC.

1

# EXHIBIT A

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUNBIT CHO,

                    Plaintiff,

          v.

META PLATFORMS, INC.,

                    Defendant.

Case No.  25-cv-08467-JCS

**ORDER GRANTING MOTION TO TRANSFER AND TRANSFERRING CASE TO WESTERN DISTRICT OF WASHINGTON**

Re: Dkt. Nos. 19, 20

## I.      INTRODUCTION

Plaintiff Eunbit Cho is a former employee of Defendant Meta Platforms, Inc. ("Meta") who asserts claims for, *inter alia*, sex discrimination and harassment/hostile work environment related to pregnancy under federal and California law.  Presently before the Court are two motions brought by Meta: 1) a Motion to Transfer Venue to the Western District of Washington and to Stay ("Motion to Transfer"); and 2) a Motion to Compel Arbitration, Motion to Stay, and Request to Hold Motion in Abeyance Pending Motion to Transfer Venue ("Motion to Compel").  For the reasons stated below, the Court GRANTS the Motion to Transfer and does not decide the Motion to Compel.[1]

## II.      BACKGROUND

### A.      The First Amended Complaint

The operative complaint is the First Amended Complaint ("FAC"). In the FAC, Plaintiff alleges that she was hired by Meta on May 10, 2021 to work as a Strategic Sourcing Manager out of a Meta office in Seattle, Washington, where Cho also resided.  FAC ¶¶ 6, 15. She worked in the

---

[1] All parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

Seattle office and sometimes remotely from her home, and also "regularly travelled to [Meta's] offices in California." *Id.* ¶ 6.

Cho is "married to a woman, a fact that she was open about in the workplace." *Id.* ¶ 17. She and her wife "decided to start a family and hoped that Ms. Cho would give birth to a child, which required In Vitro Fertilization (IVF)." *Id.* In 2024, Cho began IVF treatments "and suffered complications from the procedure." *Id.* ¶ 21. She went on medical leave from March 26, 2024, to April 29, 2024[2] to recover from these complications. *Id.* In April 2024, Cho became pregnant after her first round of IVF treatments but she lost the pregnancy, in mid-May 2024. *Id.* ¶¶ 24-25.

On August 4, 2024, "[f]ewer than ninety days after taking medical leave[,]" Cho "receive[d] her first negative performance review." *Id.* ¶ 27. "In the period following [that] review, [her supervisor] assigned [her] more and more work[,]" purportedly so she could "turn around" the negative review but Cho "believed she was being set up to fail," *Id.* ¶ 31. In October 2024, Cho informed her supervisor "that she needed to take further medical leave, but he warned her not to do so, saying that the company looked poorly on people who 'abused' medical leave." *Id.* ¶ 32.

Sometime in December 2024, Cho had a conversation with Tony Braga, a supervisor above her direct and skip supervisors, about Cho's request to work fully remote because her wife was offered a position that would require them to relocate. *Id.* ¶ 34. Although Cho "met all internal requirements for fully remote work, her request was denied." *Id.* According to Cho, in the meeting Braga said, "unprompted, that his wife had to quit her career as a lawyer to become a full-time stay-at-home mom, and that sometimes family sacrifice is necessary for work." *Id.* Cho alleges that Braga "seemed confused why both women would continue working after having children." *Id.*

In January 2025, Meta announced it was terminating all Diversity, Equity, and Inclusion

---

[2] Although the FAC states that Cho's medical leave ended on April 29, 2025 it appears from the FAC's factual allegations as a whole that this is a clerical error and that Plaintiff intended to allege that her first medical leave ended on April 29, 2024.

United States District Court
Northern District of California

("DEI") programming, *id.* ¶ 36, and its CEO, Mark Zuckerburg, announced that "he had 'decided to raise the bar on performance management and move out low performers faster.'" *Id.* ¶ 39. Also at this time, Cho became pregnant, informing her direct supervisor of her pregnancy on January 13, 2025. *Id.* ¶ 40. Her supervisor, Mr. Longhitano, informed her "that she should move to the Virtual Reality team within Meta since she would soon have a child and would have less time." *Id.* ¶ 41. "In prior conversations Mr. Longhitano had told her the Virtual Reality team was less important to Meta and vulnerable to layoffs." *Id.*

On January 16, 2025, at a prenatal appointment, Cho's doctor noted her "recent depression and anxiety due to work, and recommended time off." *Id.* ¶ 42. On January 24, 2025, Cho lodged a complaint with the Employee Relations Department "stating that she believed that she was being discriminated against for her pregnancy and retaliated against for taking protected medical leave." *Id.* ¶ 43. Cho went on medical leave starting on January 27, 2025. *Id.* ¶ 44. On February 10, 2025, while Cho was still on medical leave, Meta terminated her for "poor performance" even though she had not received a year-end performance review for 2024 and "Meta never addressed her performance for the second half of the year." *Id.* ¶ 45.

Based on these factual allegations, Cho asserts the following claims in the FAC: 1) Sex Discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a) (Claim One); 2) Hostile Workplace Harassment on the Basis of Sex in violation of 42 U.S.C. § 2000e-2(a) (Claim Two); 3) Retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Claim Three); 4) Family Medical Leave Act ("FMLA") Interference in violation of 29 U.S.C. § 2615, *et seq.* (Claim Four); 5) Retaliation under the FMLA, 29 U.S.C. § 2615, *et seq.* (Claim Five); 6) Hostile Work Environment Harassment on the Basis of Sex in violation of California Fair Employment and Housing Act ("FEHA"), California Government Code §12940(j) (Claim Six); 7) Sex Discrimination in violation of FEHA, California Government Code §12940(a) (Claim Seven); 8) Failure to Prevent Discrimination in violation of FEHA, California Government Code §12940(k) (Claim Eight); 9) Retaliation in violation of FEHA, California Government Code §12940(g) (Claim Nine); 10) Wrongful Discharge in Violation of Public Policy (Claim Ten).

Plaintiff's hostile work environment claims under Title VII and FEHA (Claims Two and

3

United States District Court
Northern District of California

Six) are based on the allegation that:

> Defendant created a hostile work environment for Plaintiff on the basis of sex, i.e. her status as a pregnant woman through the following actions: (1) giving her unwarranted negative performance reviews for the first time following her announcement she was pregnant; (2) pressuring her not to take medical leave for pregnancy related issues; (3) telling her that she should go work in a less prestigious area of the company because she was going to have children; (4) giving her a unmanageable amount of work and refusing to provide managerial support.

FAC ¶¶ 47, 65.

### B.    The Arbitration Agreement

On April 8, 2021, at 6:53 p.m., Meta sent Cho an electronic onboarding packet that included an Offer Letter and arbitration agreement ("the Arbitration Agreement"), among other things. Declaration of Maureen McKenna in Support of Defendant Meta Platforms, Inc.'s Motion to Compel Arbitration, Motion to Stay, and Request to Hold Motion in Abeyance Pending Motion to Transfer Venue ("McKenna Motion to Compel Decl.") ¶ 8 & Ex. A; Declaration of Eunbit Cho in Support of Plaintiff's Opposition to Defendant Meta Platforms, Inc.'s Motion to Compel Arbitration, Motion to Stay, and Request to Hold Motion in Abeyance Pending Motion to Transfer Venue ("Cho Opposition Decl. re Motion to Compel"), ¶ 2.  The materials were provided in "a click-through format which required [Cho] to advance through multiple screens and electronically sign various documents in order to complete the onboarding process."  Cho Opposition Decl. re Motion to Compel ¶ 2.

The Offer Letter included a section addressing the Arbitration Agreement that stated as follows:

> **Mutual Arbitration Agreement**. Facebook values all of its employees and fosters good relations with, and among, its employees, but we recognize that disagreements occasionally occur. We believe that the resolution of such disagreements is best accomplished by internal dispute resolution and, where that fails, by external arbitration. For these reasons, Facebook has adopted an arbitration agreement ("the Arbitration Agreement"), a copy of which is attached. Please review and sign the Arbitration Agreement. If you do not wish to accept the class, collective or representative action waiver contained in the Arbitration Agreement, you may opt out of the waiver by signing and returning the opt out form attached as Addendum 1 to the Arbitration Agreement, according to the instructions on the opt-out form. Unless you do so, the class,

4

collective or representative action waiver will be in effect.

*Id.*, Ex. A.  According to Cho, she was not "informed that the agreement was optional, or that [she] could choose not to sign the agreement" and "[i]t was [her] understanding that the agreement was a requirement to [her] employment and completion of the onboarding process." *Id.* ¶ 3.  She further states that she was "not advised to carefully review the arbitration agreement or informed that [she] may ask questions regarding the terms." *Id.*

The Offer Letter stated that Cho's official start date was May 10, 2021 and gave Cho until April 11, 2021 to accept Meta's employment offer by signing and returning the Offer Letter, the Confidentiality Agreement and the Arbitration Agreement. McKenna Motion to Compel Decl., Ex. A ("To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me, along with a signed and dated original copy of the Confidentiality Agreement and Arbitration Agreement, on or before April 11, 2021.").  Cho signed the Offer Letter, along with the Arbitration and Confidentiality Agreements, using an electronic signature and returned the documents to Meta at 8:12 p.m. on April 8, 2021, slightly over an hour after the documents were sent to her.  *Id.* ¶ 8.

The Arbitration Agreement is a five-page document entitled "Mutual Arbitration Agreement." *Id.*, Ex. B.  On the second page of the document, there is a section with the following caption, which is in bold: **"Final and Binding Arbitration."** *Id.*  The first sentence of the section is not in bold but is written in all capital letters and states: "WE UNDERSTAND AND AGREE THAT THE ARBITRATION OF DISPUTES AND CLAIMS UNDER THIS AGREEMENT SHALL BE INSTEAD OF A COURT TRIAL BEFORE A JUDGE AND/OR A JURY." *Id.*  It continues:

> We understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement. We also understand and agree that the arbitrator's decision will be final and binding on both Employer and Employee, subject to review on the grounds set forth in the Federal Arbitration Act ("FAA").

*Id.*

The Arbitration Agreement describes the types of claims that are (and are not) covered by the agreement. *Id.* Among the claims that are covered are the following:

> claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or municipal statutes, regulations, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

*Id.*

The Arbitration Agreement provides that "the arbitration shall be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ('AAA')" and further states: "The Arbitration Rules and Mediation Procedures of the AAA may be found on the Internet at www.adr.org/employment. A printed copy of these rules is also available upon request." *Id.* The Arbitration Agreement also provides that "[t]he Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary." McKenna Motion to Compel Decl., Ex. B.

Under the Arbitration Agreement, the arbitrator is required to "render a written award and opinion[,]" which "shall be confidential and not available to the public." *Id.* The Arbitration Agreement also contains provisions addressing the place where arbitration will occur and the law that will be applied to the parties' disputes. *Id.* In particular, the Arbitration Agreement provides:

> **Place of Arbitration**
>
> We understand and agree that the arbitration shall take place in the county in which the Employee worked at the time the arbitrable dispute or claim arose, unless the parties agree to another mutually convenient location.
>
> **Governing Law**
>
> We understand and agree that the Employer is engaged in transactions involving interstate commerce and that this is an agreement governed

United States District Court
Northern District of California

by the FAA. To the extent not inconsistent with the FAA, this Agreement and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose.

*Id.*

### C.     Motion to Transfer

Meta asks the Court to transfer this action to the Federal District Court for the Western District of Washington, in which King County (where Cho was employed by Meta) is located, pursuant to 28 U.S.C. § 1404(a).  Motion to Transfer at 1.  It contends that Cho is subject to a valid and enforceable forum-selection clause based on the provision in the Arbitration Agreement designating the place of arbitration  and therefore, the Court should apply the modified Section 1404 analysis set forth in *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 571 U.S. 49 (1988) ("*Atlantic Marine*").  *Id.*  at 2-3.  According to Meta, where *Atlantic Marine* applies, courts modify the Section 1404 analysis by giving the plaintiff's choice of forum no weight and placing the burden on the plaintiff to show why the case should not be transferred to the chosen forum.  *Id.*  at 3.  Furthermore, Meta asserts, under this modified analysis courts weigh the private-interest factor in favor of the preselected forum and disregard the parties' private interests, such as inconvenience of litigating in the chosen forum.  *Id.* According to Meta, where a Section 1404 transfer is ordered under *Atlantic Marine*, the original venue's choice of law rules are not applied by the transferee court.  *Id.*

Meta argues that forum selection clauses are "presumptively valid" and that they can be avoided only where a plaintiff makes a strong showing that " '(1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." ' " *Id.*  (quoting *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting M/*S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).  According to Mata, none of those exceptions is satisfied here. *Id.*  at 4-5.

United States District Court
Northern District of California

7

Meta further contends public interest factors favor transfer to the Western District of Washington. *Id.* at 5-6. First, it argues that Washington has a greater interest in adjudicating this case than California because Cho is a Washington citizen who was employed in Washington. *Id.* at 5. Second, it argues that because the parties agreed to the application of Washington law, a Washington court is better positioned to apply the governing law. *Id.* Third, Meta points out that this district has a heavier caseload than the Western District of Washington and asserts that the latter district will be able to resolve this case more expeditiously. *Id.* at 6.

Finally, Meta asks the Court to stay all case deadlines pending resolution of the Motion to Transfer. *Id.* at 6-7.[3]

Plaintiff opposes the Motion to Transfer, arguing that the modified analysis set forth in *Atlantic Marine* does not apply because she challenges the enforceability of the arbitration agreement on multiple grounds, including under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), which provides that predispute arbitration agreements are not enforceable with respect to sexual harassment disputes. 9 U.S.C. § 402(a). Opposition at 1, 3-4. According to Plaintiff, until the enforceability and validity of the forum selection provision is decided, the Court cannot analyze Meta's 1404(a) transfer request under *Atlantic Marine.* Plaintiff further asserts that under the traditional Section 1404 analysis, transfer to the Western District of Washington is not warranted. *Id.* at 4-8.

In its Reply, Meta rejects Cho's reliance on the EFAA to avoid the modified *Atlantic*

---

[3] Although Meta states that case deadlines should be stayed pending the resolution of *both* of the pending motions, it makes clear in both the Motion to Transfer and the Motion to Compel that it believes the Court should decline to rule on the latter motion and instead leave the Motion to Compel to be decided by the Washington court following transfer of the case to the Western District of Washington, as discussed further below. *See* Motion to Transfer at 1 ("Citing *Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967 (9th Cir. 1941), courts in the Ninth Circuit have held that district courts lack the authority to compel arbitration outside of their geographic district. Yet, under Supreme Court precedent, district courts are required to enforce arbitration agreements according to their terms. To harmonize these authorities and ensure that Plaintiff's arbitration agreement can be enforced according to its terms, Meta moves to transfer venue to the Western District of Washington so that that district can compel Plaintiff's claims to arbitration in King County, Washington, as the agreement requires."); Motion to Compel at 1 ("Meta is concurrently moving to transfer venue to the Western District of Washington so that *that* district may resolve this Motion to Compel Arbitration and compel Plaintiff's claims to arbitration in King County, Washington") (emphasis added).

*Marine* framework, arguing that the EFAA "does not speak to forum-selection clauses, venue, or section 1404(a)" and thus has "no bearing on the enforceability of the forum-selection clause" in the arbitration agreement. Reply at 2. Meta argues, "[u]nder [Cho's] view, a plaintiff could avoid a forum-selection clause by simply asserting that the arbitration agreement is unenforceable[,]" which "would invert *Atlantic Marine* and eliminate the very contractual certainty the Supreme Court instructed courts to protect." *Id.* at 3 (citing *Atlantic Marine*, 571 U.S. at 63–64). Even if the EFAA were relevant to the transfer analysis, Meta contends, it does not apply here because Plaintiff has not plausibly alleged a claim for sexual harassment. *Id.* at 2 n. 1.[4]

### D.   Motion to Compel Arbitration

In the Motion to Compel, Meta argues that under the Federal Arbitration Act ("FAA"), this case is subject to mandatory arbitration in King County, Washington because Cho entered into a valid and enforceable agreement to arbitrate with Meta that designates King County as the agreed venue for resolving disputes and the agreement is one that affects interstate commerce and expressly provides that it is governed by the FAA. Motion to Compel at 1, 4-5. It further asserts that the Arbitration Agreement delegates any disputes relating to arbitrability to the arbitrator and therefore, any challenges related to whether the agreement is unenforceable on the basis of unconscionability must be decided by the arbitrator. *Id.* at 1. In any event, Meta contends, the Arbitration Agreement is valid, covers Cho's claims and is not unconscionable. *Id.* at 6-9. It asserts that a number of California state courts have upheld the agreement as conscionable. *Id.* at 3-4.[5]

To the extent that Plaintiff attempts to avoid the arbitration agreement based on the EFAA, Meta contends her position fails because she does not state a claim for sexual harassment. *Id.* at 9-12. Citing the Ninth Circuit's model jury instruction defining "hostile work environment" under Title VII and district court cases applying Title VII standards, Meta asserts that Plaintiff's

---

[4] Meta makes this argument in more detail in its Motion to Compel.

[5] In the Motion, Meta cites to a request for judicial notice it purportedly filed with the state court decisions attached. Motion to Compel at 3-4. While no such request was filed, the parties stipulated at the motion hearing that the Court may take judicial notice of the state court decisions cited in the parties' briefs.

United States District Court
Northern District of California

Complaint does not plausibly allege a claim for sexual harassment because "[s]he claims mistreatment based on her pregnancy or efforts to become pregnant, not behavior 'of a sexual nature.'" *Id.* at 11. According to Meta, "[t]he EFAA nowhere suggests that Congress intended 'sexual harassment' to sweep in non-sexual pregnancy-related workplace disputes." *Id.*

Meta further contends Cho's sexual harassment claim fails because she does not allege "severe and pervasive conduct." *Id.* at 11-12. Instead, it asserts, Plaintiff bases her claims on "ordinary workplace management—performance reviews, leave discussions, and work assignments—which courts repeatedly hold are not actionable harassment" even if they be sufficient to state a claim for employment discrimination. *Id.* at 12 (citations omitted).

Finally, Meta argues that the Motion to Compel should be decided by the Federal District Court for the Western District of Washington after the case is transferred. *Id.* at 12-13. According to Meta, this approach addresses the conflict between the forum selection provision in the Arbitration Agreement, on the one hand, and the FAA's[6] rule that a court that enforces an arbitration agreement must order that the arbitration occur "within the district in which the petition for an order directing such arbitration was filed." *Id.* (citing 9 U.S.C. § 4; *Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967 (9th Cir. 1941); *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1093 (D. Haw. 2011)). Alternatively, Meta argues that this Court has discretion to dismiss or stay based on the parties' arbitration agreement. *Id.* at 13-14.

Plaintiff opposes the Motion to Compel on the ground that the agreement is unenforceable under the EFAA, 9 U.S.C. § 401, and points to the EFAA's definition of a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." Opposition at 5. Thus, Plaintiff asserts, the EFAA looks to state law governing sexual harassment, including the standards that apply to such claims under FEHA. *Id.* According to Plaintiff, under FEHA, "harassment 'because of sex' expressly includes harassment based on pregnancy, childbirth, or related medical conditions." *Id.* (quoting Cal. Gov. Code § 12940(j)(4)(C)). Furthermore, Plaintiff contends, "[c]ourts applying the EFAA

---

[6] Meta refers to the EFAA in making this argument. Motion to Compel. Its citation to 9 U.S.C. § 4, which is part of the FAA, makes clear that this was a clerical error.

10

*United States District Court*
*Northern District of California*

have . . . recognized that pregnancy-based harassment falls within the statute's definition of a sexual harassment dispute." *Id.* (citing *Kennedy v. Meta Platforms, Inc.*, No. CGC-23-604370, Order Denying Motion to Compel Arbitration at 2–3 (Cal. Super. Ct. Apr. 28, 2023)).

Plaintiff further asserts that the EFAA requires the Court rather than the arbitrator to decide whether the EFAA applies, notwithstanding any delegation to the arbitrator of disputes related to questions of arbitrability. *Id.* at 5-6. Therefore, Plaintiff contends, the Court should find that there was no enforceable arbitration agreement – or at least, that there are factual questions about its validity – because of the "click-through" onboarding process, which Plaintiff contends is insufficient to establish that Plaintiff knowingly consented to the arbitration agreement. *Id.* According to Plaintiff, "Courts routinely decline to compel arbitration where the employer relies solely on generalized descriptions of electronic signature procedures without demonstrating that the employee actually reviewed and assented to the arbitration agreement." *Id.* at 6. Plaintiff argues that even if the Court finds that Plaintiff's claims are subject to arbitration, it should stay the case rather than transferring or dismissing it. *Id.* (citing 9 U.S.C. § 3).

Finally, Plaintiff asserts the Court should not enforce the Arbitration Agreement because it is both procedurally and substantively unconscionable and the offending provisions of the Arbitration Agreement cannot be severed. *Id.* at 7-11. In support of this argument, Plaintiff supplies a declaration describing the click-through format of the onboarding materials she signed in order to accept her position with Meta. *See generally* Cho Opposition Declaration.

In its Reply, Meta reiterates its argument that Plaintiff has not alleged a plausible claim for sexual harassment and therefore, the EFAA does not apply. Reply at 1-2. It further asserts that Plaintiff does not dispute that the Arbitration Agreement delegates questions of contract formation and enforcement to the arbitrator. *Id.* at 2-3. It also points to the Cho Declaration as confirmation that Cho signed the agreement. *Id.* at 3-4. Finally, it argues again that the Arbitration Agreement is not invalid due to unconscionability. *Id.* at 4-7.

## III. MOTION TO TRANSFER

### A. Legal Standards Under 28 U.S.C. § 1404(a) and *Atlantic Marine*

Under 28 U.S.C. § 1404(a), a case may be transferred "[f]or the convenience of parties and

witnesses, in the interests of justice," to "any other district or division where it might have been brought." 28 U.S.C. §1404(a). In general, the factors a court may consider in determining whether transfer is appropriate include:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity with of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal., March 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.' " *Atlantic Marine*, 571 U.S. at 62–63.

"[W]hen the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum[,]'" "[t]he calculus changes, however." *Id.* at 63. The Court in *Atlantic Marine* explained that because "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system[,]'" "and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.' " *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Thus, the Section 1404(a) analysis is modified in three ways in such a scenario:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of

United States District Court
Northern District of California

12

venue will not carry with it the original venue's choice-of-law rules— a factor that in some circumstances may affect public-interest considerations.

*Atlantic Marine*, 571 U.S. at 63-64.

In the face of a valid forum selection provision, the *Atlantic Marine* framework for addressing a transfer request under Section 1404 applies except "under extraordinary circumstances unrelated to the convenience of the parties[.]" *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atlantic Marine*, 571 U.S. at 62). To interpret that exception, courts look to *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 (1972), in which the Supreme Court held that "a forum-selection clause is controlling unless the plaintiff made a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *M/S/ Bremen*, 407 U.S. at 15, 18).

## B.    Whether *Atlantic Marine* Applies

As a preliminary matter, the Court must determine whether the forum selection provision in the Arbitration Agreement is a forum selection clause within the meaning of *Atlantic Marine,* given that by its terms it specifies the location where arbitration must occur but does not address whether the agreement to arbitrate in that location also applies to litigation.  The Court finds that it is.

This issue was addressed in *Dimitroff v. Prevounce Health, Inc.*, No. 2:22-CV-03808-SB-KS, 2022 WL 17882150, at *2 (C.D. Cal. Aug. 26, 2022), in which the court found that forum selection provisions in arbitration agreements have been interpreted broadly to constitute agreements about the situs not only of arbitration but also litigation.  In that case, the plaintiff had signed an arbitration agreement with his employer that required disputes to be resolved by arbitration, to be held in Los Angeles, California, and the plaintiff sued his employer in federal district court in Los Angeles, asserting diversity jurisdiction.  2022 WL 17882150, at *1.  The employer brought a motion to transfer to the Eastern District of Michigan. *Id.*  For whatever

reason, neither side objected to litigating in federal court rather than arbitrating the dispute but they disagreed about whether the forum selection provision in the arbitration agreement had any bearing on where the case would be litigated and whether *Atlantic Marine* applied. The court found that it did, citing *Molloy v. RK Netmedia, Inc.*, Case No. CV 09-02614 MMM (AGRx), 2009 WL 10669608 (C.D. Cal. Oct. 8, 2009), in which the court found that "federal courts routinely construe provisions selecting a specific venue for binding arbitration as more generalized forum-selection clauses." *Id.* (quoting *Molloy*, 2009 WL 10669608, at *7).

The *Dimitroff* court explained that while it was not bound by *Malloy*, which was also a district court decision, "it [was] of course required to follow Supreme Court precedent" and *Malloy* followed *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). *Id.* at *2. In *Scherk*, "the Supreme Court recognized that arbitration clauses can serve multiple functions, only one of which is to specify a particular manner of dispute resolution. In addition, an arbitration clause acts as 'a specialized kind of forum-selection clause' when the parties elect to designate the 'situs of suit.'" *Id.* at *3 (citing *Scherk*, 417 U.S. at 519). Thus, the court concluded that *Atlantic Marine* applied unless the employer (the party seeking to transfer to a forum *other than* the one selected by the parties) could demonstrate that there were "extraordinary circumstances." *Id.* The employer did not meet that burden and the court therefore denied the transfer motion under the *Atlantic Marine* framework. *Id.*

The Court finds that the reasoning in *Dimitroff* is persuasive and concludes that here, as in that case, the choice of forum in the Arbitration Agreement should be read broadly as a forum selection clause for litigation. Thus, the Court must apply *Atlantic Marine* unless the forum selection clause is invalid or there are "extraordinary circumstances." While Plaintiff argues that the Arbitration Agreement as a whole is unconscionable, she does not assert that the forum selection clause itself is invalid. Nor does she contend that this case involves "extraordinary circumstances" under *M/S/ Bremen* such that it would be improper to apply the *Atlantic Marine* framework in considering whether this case should be transferred to the Federal District Court for the Western District of Washington (the situs selected in the Arbitration Agreement).

The Court also does not find persuasive Plaintiff's argument that *this* Court must decide

whether her claims fall within the ambit of the EFAA such that they are not subject to arbitration. The EFAA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C.A. § 402(a). It further provides that "[t]he applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by *a* court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b) (emphasis added). While the parties were unable to cite any on-point authority on the question, the Court agrees with Meta that there is nothing in the EFAA that suggests it was meant to modify the *Atlantic Marine* analysis with respect to the appropriate venue for litigation. Further, as a practical matter, transfer to the Federal District Court for the Western District of Washington will not deprive Plaintiff of her right to have a court decide if the EFAA applies.

Accordingly, the Court concludes that the *Atlantic Marine* framework applies to Meta's Motion to Transfer.

### C.    *Atlantic Marine* **Modified Analysis**

Under *Atlantic Marine*, because the parties have agreed to venue in King County, Washington, Plaintiff's choice of forum is not entitled to deference and any private interest factors, such as convenience of the parties and witnesses, must give way to the parties' agreement. Further, Plaintiff has not identified any public interest that suggests that the forum selection provision should not be enforced. To the contrary, because Plaintiff was employed by Meta in the selected forum and still resides there, the interests of Washington state in the parties' dispute is at least equal to California's interest in the controversy based on the fact that Meta's headquarters lies within this District.

Accordingly, the Court finds that this case should be transferred to District Court for the

15

Western District of Washington.[7]

## IV. CONCLUSION

For the reasons stated above, the Motion to Transfer is GRANTED.  This case shall be transferred to the District Court for the Western District of Washington.

**IT IS SO ORDERED.**

Dated:  May 26, 2026

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[7]Having found that transfer of the case is appropriate, the Court declines to rule on Meta's Motion to Compel.  Rather, it leaves that motion to be decided by the transferee court, which has the authority to order the case to arbitration in King County, Washington if it determines that Meta's motion should be granted.

16