UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMILY GAL,

                    Plaintiff,

        v.

META PLATFORMS INC.,

                    Defendant.

Case No. 25-cv-06110-JST

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO CHANGE VENUE**

Re: ECF No. 19, 20

Now before the Court are Defendant Meta Platform Inc.'s motion to compel arbitration, ECF No. 20, and motion to change venue, ECF No. 19. The Court will grant the motion to compel arbitration and deny the motion to change venue.

I.    **BACKGROUND**

Meta Platforms hired Emily Gal as a Product Marketing Lead in October 2021. ECF No. 1 ¶ 12. Before starting, Gal signed an agreement to arbitrate all claims "that arise out of or relate to" her employment. ECF No. 20-2 at 24. The agreement designated the location of arbitration as "the county in which the Employee worked at the time of the arbitrable dispute or claim arose" and the governing law as the FAA and "the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose." *Id*. at 26. Gal worked from her home office in Maricopa County, Arizona, ECF No. 1 ¶ 9, but alleges she frequently traveled to Meta's Bay Area headquarters. ECF No. 32-1 ¶ 4–5. She alleges that during her employment she was subjected to gender discrimination, age discrimination, and sexual harassment.

Gal alleges that, beginning in 2022, she experienced difficulty working with a colleague named Kamath who "was consistently disrespectful to Plaintiff and other female colleagues." ECF No. 1 ¶ 14. Kamath canceled one-on-one meetings, refused to meet with Gal, and directed

her to work with his subordinate despite being Gal's peer and despite their manager's insistence that he treat Gal as a peer. *Id.* ¶¶ 14–15. Kamath excluded Gal and other women from important meetings, was dismissive of their work, and demanded additional analysis from female workers without justification. *Id.* ¶ 16. Kamath blamed Gal and her female colleagues for strategic missteps, despite those errors resulting from "decisions made by male colleagues." *Id.* ¶ 17. Gal and other female employees were allegedly labeled as "difficult" and "not collaborative." *Id.* ¶ 18. They were assigned secretarial tasks by Kamath unless another male employee volunteered. *Id.*

In 2022, Gal received a performance rating of "Exceeds Expectations." *Id.* ¶ 19. She began maternity leave on January 1, 2023. *Id.* ¶ 20. During her leave, Gal and her team were moved as part of a reorganization effort. *Id.* ¶ 21. She was demoted from a manager position to an "independent contributor" position and Meta "created a new managerial role on the team to which Plaintiff was moved." *Id.* While Gal was on leave, Meta contacted her and another female on leave and asked them to interview for the new management role. *Id.* ¶ 23. The position was ultimately given to a male colleague whose interview was allegedly scheduled around his six-week "recharge" leave. *Id.* ¶ 25. Gal contends that her leave was a factor in the reorganization and that Meta terminated multiple women on maternity leave during a round of layoffs. *Id.* ¶¶ 22, 24. On May 24, 2023, while Gal remained on leave, her new male supervisor contacted Gal "and expressed how much the team would benefit from [her] contributions once she returned from leave." *Id.* ¶ 28. On August 2, 2023, while still on leave, Gal attended her first one-on-one meeting with her supervisor who asked when she would return. *Id.* ¶ 29. He requested that she participate in an upcoming team offsite event, which she attended virtually from September 18–20, 2023, while on protected leave. *Id.* ¶¶ 30–31.

Gal returned from leave on September 25, 2023. *Id.* ¶ 32. She alleges that her new supervisor engaged in a pattern of behavior intended to cause her to fail: assigning her high-stakes tasks "with minimal context and an implied sense of urgency based on incomplete or misleading information," altering project requirements, and blaming Gal when the projects were not completed according to plan. *Id.* ¶ 33. She alleges that her new supervisor was unpredictable, did not provide adequate support, and placed undue pressure on her. *Id.* ¶¶ 34–35. She claims that

2

her workload exceeded that of her male colleagues, that she reported being overwhelmed to her supervisor, and that she received "gendered feedback" that she was "stubborn" and "difficult." *Id.* ¶¶ 37, 39. In early 2024, Meta "selectively stripped Plaintiff of resources with no plan to backfill, leaving Plaintiff critically under-resourced despite her repeated warnings of same." *Id.* ¶ 40.

In February 2024, Gal and other female employees "delivered first-hand evidence" of the foregoing problems to Kamath in a cross-functional meeting. *Id.* ¶ 42. Two months later, Gal reached out to her new supervisor to express the same concerns. *Id.* ¶ 43. In August and September 2024, Gal was named as the primary witness in two formal complaints submitted by female employees. *Id.* ¶ 47. Following her participation in the handling of these internal complaints, two male colleagues retaliated against her by failing to respond to or acknowledge messages in which Plaintiff asked for feedback concerning her work product. *Id.* ¶ 48. Gal was also excluded from meetings which included her male colleagues. *Id.*

In August 2024, Plaintiff attended an offsite meeting in Chicago along with her supervisor and other team members. *Id.* ¶ 44. "Following an emotional conversation about the toll of balancing caregiving obligations with the mounting stress and pressure of work, [Gal's supervisor] reached out to check in on [her]." *Id.* The next morning, he reassured her she "was doing a great job" and she received a mid-year rating of "Meets and/or Exceeds" expectations. *Id.* ¶¶ 45–46. In October 2024, a new employee was hired to support Gal's project, but only fifty percent of their time was allocated to Gal's work. *Id.* ¶ 40.

On February 10, 2025, Gal was terminated. *Id.* ¶ 49. On July 21, 2025, she filed a complaint alleging sex discrimination under Title VII and California state law, sexual harassment under Title VII, age discrimination under federal law, and interference and retaliation in violation of the Family and Medical Leave Act, Title VII, and California state law. *Id.* ¶¶ 54–109. Meta moves to compel arbitration under the parties' September 2021 agreement and the change venues to the District of Arizona. ECF Nos. 19–20.

## II.     JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

## III.   DISCUSSION

### A.   Motion to Compel Arbitration

#### 1.   Legal Standard

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration under the FAA, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In making this determination, "courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "Courts may consider evidence outside of the pleadings, such as declarations and other documents filed with the court." *Burger v. Northrop Grumman Sys. Corp.*, No. 21-cv-06761, 2021 WL 8322270, at *4 (C.D. Cal. Oct. 27, 2021). Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court must stay the action pending arbitration. 9 U.S.C. § 3.

Gal contends that her arbitration agreement with Meta Platforms does not encompass her

4

claims because she plausibly alleges a hostile work environmental sexual harassment claim.[1] Under the Ending Forced Arbitration Act ("EFAA) a "sexual harassment dispute" or those "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4), may not be arbitrated.  The arbitration agreement itself also excludes sexual harassment claims by its terms.  ECF No. 20-2 at 24.

Both Meta and Plaintiff assert that the plausibility standard applied on a motion to dismiss is the appropriate standard for determining whether a complaint's allegations are sufficient to invoke the EFAA.  ECF No. 20 at 25; ECF No. 33 at 5.  The Court therefore does likewise.  *Lee v. Marriott*, No. 25-cv-1169-EMC, 2025 WL 2689263, *10 n.4 (N.D. Cal. Sept. 21, 2025) (applying plausibility standard when applied by both parties).[2]

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, mere legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678–79.

---

[1] Gal concedes that the agreement is otherwise enforceable.  ECF No. 33 at 10.

[2] Some courts have adopted a more liberal pleading standard where "a plaintiff need only 'plead nonfrivolous claims relating to . . . conduct alleged to constitute sexual harassment.'" *Cardenas v. F.D. Thomas, Inc.*, No. 24-cv-1814-DAD-JDP, 2025 WL 418753, at *4 (E.D. Cal. Feb. 6, 2025) (quoting *Diaz-Roa v. Hermes, L., P.C.*, No. 24-cv-2105-LJL, 2024 WL 4866450, *14 (S.D.N.Y. Nov. 21, 2024)).  Others have evaluated EFAA arguments using the plausibility standard under Rule 12(b)(6).  *See Van de Hey v. EPAM Sys., Inc.*, 2025 WL 829604 (N.D. Cal. Feb. 28, 2025); *Arouh v. GAN Limited*, No. 23-cv-2001-FWS, 2024 WL 3469032, *6 (C.D. Cal. Mar. 22, 2024).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.    Discussion

The EFAA prohibits forced arbitration of disputes arising out of "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4). Gal argues her allegations support a plausible sexual harassment dispute under Title VII of the Civil Rights Act of 1964 and California's Fair Employment and Housing Act ("FEHA").[3]  ECF No. 33 at 7.

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).  To plead a hostile work environment, Gal must show that: "1) she was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was "sufficiently severe or pervasive to alter [her] conditions of . . . employment and create an abusive working environment."  *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995); *Christian v. Umpqua Bank,* 984 F.3d 801, 809 (9th Cir. 2020).  The Court must consider "all circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Christian*, 984 F.3d at 809 (quoting *Harris*, 510 U.S. at 23).  The working environment must both subjectively and objectively be perceived as abusive. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citation omitted).  "Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics."  *Id.*  "The objective measure of an abusive working

_____

[3] Meta argues that FEHA should not govern this dispute because Gal worked from Arizona.  ECF No. 20 at 31–32.  The Court is not persuaded by this argument.  While Gal resided in Arizona, she alleges that the conduct occurred in California.  ECF No. 32-1 ¶ 5; *see Fellers v. C.W. Martin L. Off., PLLC*, No. 3:26-CV-900-GPC-JLB, 2026 WL 1214671, at *10 (S.D. Cal. May 1, 2026) (applying California law where plaintiff "allegedly was harassed in California and was terminated while working in California").  "If the conduct that creates liability occurs in California, California law properly governs that conduct."  *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citation and quotation omitted), *certified question accepted sub nom. Oman v. Delta Air Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018), and *certified question answered*, 9 Cal. 5th 762, 466 P.3d 325 (2020).  And although the parties agree that disputes arising under the agreement are governed by Arizona law, ECF No. 20-2 at 26, the question before the Court is whether the arbitration agreement—including the choice of law language—governs the dispute. Notably, Meta does not provide an alternative sexual harassment dispute standard under Arizona law.  The Court concludes that the applying FEHA to the dispute is appropriate.

environment is set by what a reasonable woman would consider abusive." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (citing *Ellison v. Brady,* 924 F.2d 872, 879–80 (9th Cir.1991)). "Not every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).

Under the FEHA, "'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions." Cal. Gov't Code § 12940(j)(4)(C). Harassment includes, but is not limited to verbal harassment (*e.g.,* derogatory comments or slurs), physical harassment (*e.g.,* assault or physical interference), visual forms of harassment (*e.g.,* derogatory posters, cartoons, or drawings), and unwanted sexual advances, 2 Cal. Code. Regs. § 11019, but sexual harassment need not be motivated by sexual desire. *Id*. § 11034(f). Courts look to the totality of the circumstances to determine whether harassment is severe or pervasive enough to alter the workplace environment. *Bailey v. San Francisco Dist. Attorney's Off.*, 16 Cal. 5th 661, 628 (Cal. 2024); Cal. Gov't Code § 12923(c). This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." *Bailey*, 16 Cal. 5th at 628 (finding that a single use of an "unambiguous racial epithet" insufficient under the FEHA); *McCaffrey v. Republic Servs., Inc.*, No. 23-CV-06224-SI, 2025 WL 360745, at *7 (N.D. Cal. Jan. 31, 2025) (holding at summary judgment that "being called 'old man' twice does not create an objectively hostile working environment").

Sexual harassment is distinct from gender discrimination. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705–07 (2009) ("explaining that the terms "discriminate" and "harass" appear in separate FEHA provisions and define distinct wrongs). "[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id.* To state a discrimination claim under FEHA, a plaintiff must plausibly allege that "(1) [s]he is a member of a

United States District Court
Northern District of California

protected class; (2) [s]he is qualified for his position; (3) [s]he experienced an adverse employment action; and (4) other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 800 (N.D. Cal. 2015).

"Personnel actions such as 'hiring and firing, job or project assignments, . . . the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, . . . and the like, do not come within the meaning of harassment" but may come within the meaning of discrimination. *Johannessen v. JUUL Labs, Inc.*, No. 23-cv-03681-JD, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65 (1996)).

Meta contends that the EFAA does not apply because Gal has not plausibly alleged sexual harassment. ECF No. 20 at 25–31. Meta argues that Gal's allegations involve personnel decisions, which are insufficient to state a claim for sexual harassment. It asserts that Gal has not alleged any verbal, physical, or visual harassment, and has not identified any intimidation, ridicule, or insults—and certainly none sufficiently severe as to alter the conditions of Gal's employment. *Id.* at 26–27.

The Court agrees. As a colleague court recently held,

> Nothing in the complaint plausibly alleges sexual harassment as contemplated by the FEHA. The complaint does not allege that Johannessen was subjected to unwelcome sexual advances or experienced "epithets, derogatory comments or slurs" on the basis of her gender or pregnancy. 2 Cal. Code Regs. § 11019(2). It does not allege physical or visual harassment of a sexual nature. *Id.* The FEHA harassment claim is based solely on the allegations that Johannessen's job duties were changed adversely after she returned to work from maternity leave; she was not included in some meetings; one of her direct reports was reassigned to a different manager; and she was provided with a lactation room with inadequate privacy, including "no lock on the door." [citations] These incidents plausibly allege discrimination or gender bias by the employer for pleading purposes, but not sexual harassment in interpersonal relationships at work. Personnel actions such as "hiring and firing, job or project assignments, . . . the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, . . . and the like, do not come within the meaning of harassment." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996).

*Johannessen*, 2024 WL 3173286, at *4. Similarly here, Gal alleges that she was excluded from certain meetings, that she received inadequate support from her managers, that she received gendered feedback, that she was demoted after her maternity leave, and that she was ultimately terminated. But Gal does not contend that she was subjected to derogatory verbal harassment, physical harassment, visual forms of harassment, requests for sexual favors, or other instances in which "sex [was] used as a weapon to create a hostile work environment." *Singleton v. United States Gypsum Co.*, 140 Cal. App. 4th 1547, 1564 (2006). These contentions, while they may allege other kinds of workplace misconduct—a question the Court does not resolve—do not plausibly allege sexual harassment as contemplated by Tile VII or the FEHA. "Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (quoting *Reno v. Baird,* 18 Cal.4th 640, 647 (1998)).

Because Gal does not plausibly allege a sexual harassment dispute for the purposes of the EFAA, the Court grants Meta's motion to compel arbitration.

### B.    Motion to Change Venue

Meta also moves to change venue to the United States District Court for the District of Arizona.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where the parties' contract contains a valid forum-selection clause, "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

"A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law,

United States District Court
Northern District of California

(3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum,(6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99. When moving to transfer under Section 1404(a), "Defendants must show that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum." *Adobe Sys. Inc. v. Childers*, No. 10-cv-03571 JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (citation omitted). Where there is a forum-selection clause, however, the plaintiff bears the burden of showing why the court should not transfer the case to the agreed-upon forum, and the court "should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 63–64. "[A] proper application of [§] 1404(a) requires that a valid forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. at 60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

Contrary to Meta's insistence, the parties did not agree on the forum in which a lawsuit must be filed. The forum selection clause designates the location of *the arbitration* but it does not designate where *litigation* must occur or "point to a particular federal district." *Atl. Marine*, 571 U.S. at 59. The parties' arbitration agreement contains a clause designating the "Place of Arbitration" as "the county in which the Employee worked at the time the arbitration dispute or claim arose" and another designating the "Governing Law" as "the state where Employee works or worked at the time the arbitrable dispute or claim arose." ECF No. 1-1 at 21. The plain meaning of the words that the parties chose only designated the geographic location of the arbitration and the governing law of their disputes—not the forum in which a case must be filed. Tellingly, Meta identifies no case in which an agreement to arbitrate in one state required the parties to file a lawsuit in that same state. Nor does Meta cite a case in which an agreement to apply the law of one state required the Court to transfer the case to that state.

Where there is not a governing forum selection clause, the ordinary principles in a § 1404 analysis apply. *See Nob Hill Catering, Inc v. Back of the House LLC*, No. 22-cv-5197-KAW,

10

2023 WL 3149260, at *4–5 (N.D. Cal. Mar. 16, 2023) (considering the usual § 1404 factors when there is not a valid forum selection clause); ECF No. 38 at 3.  Meta contends that the § 1404(a) factors favor transfer:  Gal resides in Arizona, Arizona law governs the dispute, and Arizona has a strong local interest in adjudicating employment disputes of its residents.  ECF No. 19 at 14–15; ECF No. 38 at 4 (citing *Alt. Marine*, 571 U.S. at 64).  Gal responds that the case should remain here:  she chose this forum, Meta is headquartered in the Northern District of California, the events in this dispute occurred in California, any evidence is located in the district, and this district has a strong interest in the controversy since Meta is major employer.

The Court finds that Meta has not overcome the strong presumption in favor of Gal's choice of forum.  Meta does not dispute that Defendant is headquartered in this district, that most of the events happened here, that most of the evidence is located here, and that California maintains a strong interest in this case.  Gal, the party most inconvenienced by filing this lawsuit in California, chose to bring her case here and traveled frequently to California for during her employment at Meta.  ECF No. 32-1 ¶ 4.  Furthermore, judges in this district routinely apply the laws of other states as a case might require.  *See Stencel v. Lyft, Inc.*, No. 24-cv-1535-MMC, 2024 WL 4008752, *4–5 (N.D. Cal. Aug. 29, 2024) (applying Arizona law); *Steiner v. OneWest Bank, FSB*, No. C 13-5349-SBA, 2014 WL 2452212, *4 (N.D. Cal. May 30, 2014) (same).

Giving weight to Gal's choice of forum and the factors discussed above, the Court denies the motion to transfer to the District of Arizona.

**CONCLUSION**

The motion to change venue, ECF No. 19, is denied.  The motion to compel arbitration, ECF No. 20, is granted and the Court stays these proceedings.  The Clerk shall administratively close the file.  This order shall not be considered a dismissal or disposition of the action against

/ / /

/ / /

/ / /

/ / /

/ / /

11

United States District Court
Northern District of California

any party.  If further proceedings become necessary, any party may initiate them in the same manner as if this order had not been entered.

**IT IS SO ORDERED.**

Dated:  June 29, 2026



_____
JON S. TIGAR
United States District Judge